# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Alison Brisbin,

                Plaintiff,

                                  Civ. No. 10-2130 (RHK/JJK)
                                  **MEMORANDUM OPINION**
                                  **AND ORDER**

v.

Aurora Loan Services, LLC, *et al.*,

                Defendants.

Jonathan L.R. Drewes, Drewes Law, PLLC, Minneapolis, Minnesota, for Plaintiff.

Eric D. Cook, David R. Mortensen, Wilford & Geske, P.A., Woodbury, Minnesota, for Defendants.

## INTRODUCTION

This action arises out of a September 25, 2009, promise by Defendant Aurora Loan Services, LLC ("Aurora") to postpone a pending sheriff's sale on Plaintiff Alison Brisbin's home. After the sale occurred as scheduled, Brisbin commenced the instant action, seeking damages and an order invalidating the sale. Defendants now move for summary judgment. For the reasons set forth below, the Court will grant their Motion.

## BACKGROUND

The relevant facts are undisputed. Brisbin owned a home located at 1008 Emerson Avenue North in Minneapolis (the "Property"). On August 31, 2006, she executed a $276,000 note in favor of Cornerstone Mortgage Partners XII, LLC

("Cornerstone"), secured by a mortgage on the Property in favor of Cornerstone's nominee, Defendant Mortgage Electronic Registration Systems, Inc. ("MERS").

Brisbin eventually fell behind on the payments. In April 2009, she contacted Aurora, the loan's servicer, to discuss foreclosure alternatives. Aurora followed up that conversation by sending her a letter discussing various possibilities, including a forbearance plan, a loan modification, or a short sale. In July 2009, Brisbin asked Aurora to put her on a forbearance plan, which would require her to make lower monthly payments for three months, with a modified payment plan to follow. Aurora initially agreed. Brisbin mailed Aurora the first payment under the forbearance plan, but in September 2009 it returned her check and informed her that her loan was not eligible for a forbearance.

Meanwhile, Aurora had commenced foreclosure proceedings. On September 19, 2009, it served Brisbin with pre-foreclosure documents required under Minnesota law, which notified her of a sheriff's sale scheduled for October 23, 2009. On September 25, 2009, she telephoned Aurora, concerned about the impending sale. In that conversation, she requested a loan modification, and Aurora advised her that the sheriff's sale would be postponed while her request was pending. Nothing was sent by Aurora documenting that promise, however.[1]

For reasons not disclosed in the record, the sheriff's sale was not postponed but

---

[1] Aurora's internal notes from the conversation indicate that it indeed told Brisbin it would postpone the sheriff's sale. The notes also indicate that Aurora told her to call the company the day before the scheduled sale date, which Defendants claim she failed to do. That alleged failure is irrelevant for present purposes, however.

rather went forward as scheduled on October 23, 2009. Brisbin's loan-modification request was denied three days later, due to the sheriff's sale having already taken place.

On May 23, 2010, Brisbin commenced this action against Aurora, MERS, and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), to which the Property's sheriff's-sale certificate had been assigned. Brisbin asserted five claims in her Complaint: ineffective notice of foreclosure sale (Count I), promissory estoppel (Count II), illegal foreclosure under the Home Affordable Modification Program ("HAMP") (Count III), and negligent and intentional misrepresentation (Counts IV and V, respectively). She sought monetary damages and a judgment declaring the sheriff's sale null and void. With discovery now complete, Defendants move for summary judgment.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a

genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

**I.    The oral promise did not undermine the sheriff's sale**

In Count I, Brisbin asserts that the sheriff's sale was invalid because although she received the pre-sale notices required under Minnesota law, Aurora's September 25, 2009, oral promise rendered those prior notices ineffective. (See Mem. in Opp'n at 6-8.) She relies upon subdivision 1 of Minnesota Statutes § 580.07 and claims that Defendants "failed to strictly comply" with that statute because they agreed to postpone the sale "but failed to provide any notice of postponement." (Id. at 8.) The Court rejects this claim.

At the outset, the Court does not believe that the statute, on its face, applies to the present facts. While Section 580.07 does require publication of a sheriff's sale postponement, it imposes that obligation on "[t]he party *requesting the postponement*." Minn. Stat. § 580.07, subd. 1(a) (emphasis added). Here, it appears that *Brisbin*, not Aurora, asked for the sheriff's sale to be postponed, and hence the statute appears to have imposed no obligation on Defendants. And Brisbin has cited no cases invalidating a sheriff's sale under this statute.

Regardless, other provisions of Minnesota law undermine Brisbin's claim. In particular, the Minnesota Credit Agreement Statute bars the enforcement of "credit agreements" not set forth in writing. Minn. Stat. § 513.33, subd. 2 ("A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor

- 4 -

and the debtor."). Though couched in somewhat different terms, that is the essence of Brisbin's argument here: Aurora entered into an oral agreement not to foreclose on her home. But because that agreement was not in writing (or signed by the parties), it is of no legal moment under Minnesota law.

Brisbin attempts to avoid the statute's reach by arguing that Aurora's promise was not in fact a "credit agreement." (Mem. in Opp'n at 5-6.) But as this Court has previously recognized, the statute reaches not only "credit agreements" themselves, but also any "agreement by a creditor to take certain actions, such as . . . *forbearing from exercising remedies under prior credit agreements*." Massey v. Mortg. Elec. Registration Sys., Inc., Civ. No. 09-1144, 2010 WL 2104549, at *2 (D. Minn. May 25, 2010) (Kyle, J.) (citing Minn. Stat. § 513.33, subd. 3(a)(3)).[2] There can be no serious dispute that Brisbin's mortgage was a "credit agreement," see Myrlie v. Countrywide Bank, Civ. No. 09-1441, 2011 WL 742730, at *7 (D. Minn. Feb. 23, 2011) (Ericksen, J., adopting Report & Recommendation of Boylan, M.J.); Massey, 2010 WL 2104549, at *2, and hence Aurora's oral promise to forbear enforcing it fell within the statute's ambit and was nugatory *ab initio*. As a result, it can have had no impact on the sheriff's sale.

Moreover, this result is consistent with the statute of frauds, which places special emphasis on writings in transactions concerning real property. If an alleged oral promise not to foreclose were sufficient to retroactively unwind a sheriff's sale, plaintiffs could easily undermine the statutory scheme for foreclosures by asserting that they had received such promises from their lenders. This is precisely why Minnesota has long recognized

---

[2] No party has cited Massey.

that "a contract subject to the statute of frauds [can] not be modified orally," Rooney v. Dayton-Hudson Corp., 246 N.W.2d 170, 175 (Minn. 1976), so as to prevent persons from enforcing, "by means of fraud and perjury," alleged oral contracts "that were never in fact made." Radke v. Brenon, 134 N.W.2d 887, 890 (Minn. 1965).

**II.    The promissory-estoppel claim fails**

In Count II, Brisbin asserts that the sheriff's sale must be invalidated under the doctrine of promissory estoppel. (Mem. in Opp'n at 8-16.) Promissory estoppel is "an equitable doctrine that implies a contract in law when none exists in fact." Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000). In other words, the gravamen of Count II is the same as Count I: Defendants orally agreed to postpone the sheriff's sale on Brisbin's home, and she is entitled to enforce that oral agreement. And like Count I, this claim fails due to the Minnesota Credit Agreement Statute.

Simply put, Brisbin cannot employ promissory estoppel to create an implied-in-fact oral contract when Minnesota law precludes the formation of such a contract. As noted in Greuling v. Wells Fargo Home Mortgage, Inc., 690 N.W.2d 757 (Minn. Ct. App. 2005), "claims on agreements falling under section 513.33 *fail as a matter of law if the agreement is not in writing*." Id. at 761-62 (emphasis added) (rejecting promissory-estoppel claim based on oral promise to modify mortgage); accord, e.g., Myrlie, 2011 WL 742730, at *7 (same); Hinden v. Am. Bank of N., No. A09-404, 2009 WL 4573909, at *2 (Minn. Ct. App. Dec. 8, 2009) (same). Were it otherwise, plaintiffs could make an easy end-run around the Minnesota Credit Agreement Statute.

Regardless, even if promissory estoppel provided an avenue to challenge the sheriff's sale, there are two reasons why that doctrine should not be applied here. First, promissory estoppel requires a plaintiff to show that she relied on a promise to her detriment. Martens, 616 N.W.2d at 746. Brisbin cannot make such a showing. Her argument that she would have "*attempted* to borrow money from [her] friends, obtain a loan from a financial institution, and/or tried to sell [her] home" in order to avoid foreclosure (Brisbin Aff. ¶ 14 (emphasis added)) is little more than conjecture insufficient to defeat summary judgment.

For example, Brisbin claims she "is confident she would have been able to borrow enough money" to bring her account current. (Mem. in Opp'n at 13.) Yet, this conclusory assertion lacks any factual support, such as affidavits from individuals indicating a willingness to lend money to her. Moreover, she was admittedly many thousands of dollars behind on her payments. If she had the ability to borrow such a large sum from her friends and family (or a bank), presumably she would have done so long before a sheriff's sale was imminent.[3] Further, she acknowledged in her deposition that her family had no ability to assist her – instead, she claimed she would have tried to "set up a fundraiser" to marshal the amount necessary to cure her delinquency. (Brisbin Dep. at 59.)

---

[3] The same is true of an attempt to sell her home – if the Property were easily saleable, it is reasonable to conclude she would have offered it for sale once she fell behind on the payments and not waited until less than a month remained before the sheriff's sale. Yet, she undertook no efforts to sell the Property. (Brisbin Dep. at 57.)

Simply put, Brisbin has failed to proffer *evidence* that she relied on Aurora's promise to her detriment. Her speculation that she could have accumulated enough funds to prevent the sheriff's sale or sold the property beforehand does not suffice. E.g., Binkley v. Entergy Operations, Inc., 602 F.3d 928, 931 (8th Cir. 2010) ("In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.").

Second, in order to invoke promissory estoppel, a plaintiff must show that the "promise must be enforced [in order] to prevent injustice." Martens, 616 N.W.2d at 746. The Court perceives no injustice in refusing to enforce Aurora's promise to postpone the sheriff's sale – a right to which it was indisputably entitled under Brisbin's loan documents. See Stewart v. GMAC Mortg., LLC, Civ. A. No. 2:10-cv-149, 2011 WL 1296887, at *6 (S.D. Miss. Mar. 31, 2011) ("[E]ven accepting as true that a representative of GMAC told Stewart that GMAC would not foreclose on his home, promissory estoppel is not appropriate because a refusal to enforce that promise here would not result in injustice. Stewart was delinquent in his mortgage payments and foreclosure was appropriate under the [mortgage documents].").

**III.   Brisbin cannot sue under HAMP**

In Count III, Brisbin asserts that the foreclosure and sheriff's sale were "illegal" under HAMP, entitling her to "invalidat[e] the unjust foreclosure proceedings." HAMP, however, does not provide Brisbin with any cause of action.

Zoher v. Chase Home Financing contains a succinct overview of HAMP:

> During the economic crisis of 2008, Congress passed the Emergency Economic Stabilization Act of 2008 ("EESA"), to "immediately provide authority and facilities that the Secretary of the Treasury can use to restore liquidity and stability to the financial system of the United States[.]" 12 U.S.C. § 5201 et seq. The statute directed the Secretary to implement a plan to minimize foreclosures. Id. § 5220. To that end, the Department of Treasury, in conjunction with other government institutions, created the Making Home Affordable Program. HAMP is a component of this initiative.
>
> HAMP works "by providing financial incentives of participating mortgage servicers to modify the terms of the eligible loans." Marks v. Bank of Am., No: 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *5 (D. Ariz. June 22, 2010). Mortgagors may apply to servicers for modification of home loans if the mortgagor meets certain criteria. When considering modifications, participating servicers are obliged to abide by guidelines set forth by the Secretary of Treasury in the Home Affordable Modification Program Guidelines ("Guidelines"). U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines (Mar. 4, 2009). To assure compliance with these Guidelines, the Secretary designated Freddie Mac[4] to be a compliance officer. Marks, 2010 WL 2572988, at *6. In that capacity, Freddie Mac independently evaluates data provided by the servicers to determine whether they are properly assessing borrower eligibility. Id.

No. 10-14135-CV, 2010 WL 4064798, at *2 (S.D. Fla. Oct. 15, 2010) (footnote added). Under HAMP, loan servicers like Aurora "voluntarily enter into contracts with [the Government] to perform loan modification services." Sena v. Bank of Am. Home Loans, No. 2:10-CV-00947, 2011 WL 1204333, at *2 (D. Nev. Mar. 29, 2011). There is no dispute that, at all relevant times, Aurora was a HAMP participant pursuant to such an agreement with the Government.

Brisbin asserts that the sheriff's sale here was invalid because Aurora violated

---

[4] Freddie Mac is a government-sponsored enterprise created in 1970 to expand the secondary market for mortgages in the United States. See 12 U.S.C. § 1451 et seq.

HAMP guidelines by failing to stop foreclosure proceedings while she sought a loan modification. Defendants seek dismissal because the EESA created no private right of action against loan servicers that fail to comply with HAMP guidelines. Notably, Brisbin agrees. (See Mem. in Opp'n at 16 (noting that Brisbin "agrees with [Defendants] that the statutory framework behind HAMP does not create a private right of action").) She argues that she is nevertheless entitled to sue as a third-party beneficiary of Aurora's HAMP agreement with the Government. (Id.) The Court rejects this argument.

Suffice it to say, other plaintiffs challenging foreclosures have made this same argument, and it has been roundly rejected. See, e.g., Bourdelais v. J.P. Morgan Chase Bank, N.A., No. 3:10CV670, 2011 WL 1306311, at *3 (E.D. Va. Apr. 1, 2011); Sena, 2011 WL 1204333, at *3; Zoher, 2010 WL 4064798, at *4; Hoffman v. Bank of Am., N.A., No. C 10-2171, 2010 WL 2635773, at *3 (N.D. Cal. June 30, 2010). While a handful of courts have reached the opposite result, the Court declines to follow them in light of the substantial weight of authority reaching the contrary conclusion.[5] For the reasons set forth in Zoher and elsewhere, which need not be repeated here, the Court concludes that Brisbin is not a third-party beneficiary under Aurora's agreement with the Government and, hence, she lacks standing to sue for the alleged HAMP violation.

---

[5] Brisbin cites two such cases, Reyes v. Saxon Mortgage Services, Inc., No. 09cv1366, 2009 WL 3738177 (S.D. Cal. Nov. 5, 2009), and Citimortgage, Inc. v. Moores, No. EQCV063490 (Iowa Dist. Ct. Aug. 5, 2010). Neither contained any detailed analysis of HAMP or whether it created a private right of action, however.

### IV. The misrepresentation claims cannot stand

Finally, Brisbin asserts that the promise to postpone the sheriff's sale was a negligent (Count IV) or intentional (Count V) misrepresentation. In either case, however, she must show that she relied on the alleged misrepresentation to her detriment. See, e.g., Holliday v. Indep. Sch. Dist. No. 709, No. A05-1645, 2006 WL 1738168, at *5 (Minn. Ct. App. June 27, 2006); Woods v. Lordbock, No. C2-96-77, 1996 WL 330838, at *1 (Minn. Ct. App. June 18, 1996). For the reasons set forth above (see supra at 6-8), she has failed to adduce sufficient evidence, rather than speculation, that her reliance on the promise was detrimental to her. Accordingly, each of these claims fails. See also Vida v. OneWest Bank, F.S.B., Civ. No. 10-987-AC, 2010 WL 5148473, at *7-8 (D. Or. Dec. 13, 2010) (dismissing fraud claim based on plaintiff's allegation that lender told her foreclosure would be put on hold).

### CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 14) is **GRANTED** and Brisbin's Complaint (Doc. No. 1, Ex. 1 ) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 2, 2011               s/Richard H. Kyle
                                 RICHARD H. KYLE
                                 United States District Judge